**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISON**

| | | |
|---|---|---|
| **IGNACIO MORALES PAZ, Individually and** | § | |
| **As Representative of the ESTATE OF** | § | |
| **ALMA HERNANDEZ PAZ, Deceased, and** | § | |
| **As Representative of the ESTATE OF** | § | |
| **BRANDON MORALES PAZ, Deceased;** | § | **Civil Action No. 6:18-cv-00253** |
| **and KENIA MORALES PAZ,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **THE GOODYEAR TIRE & RUBBER CO.,** | § | |
| **GOODYEAR DUNLOP TIRES NORTH** | § | |
| **AMERICA, LTD., and GOODYEAR** | § | **JURY DEMANDED** |
| **IN ITS ASSUMED OR COMMON NAME,** | § | |
| **Defendants** | § | |

**COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Ignacio Morales Paz, Individually and as Representative of the Estate of Alma Hernandez Paz, Deceased, and as Representative of the Estate of Brandon Morales Paz, Deceased, and Kenia Morales Paz, Plaintiffs, complaining of and against The Goodyear Tire & Rubber Co., Goodyear Dunlop Tires North America, Ltd., and Goodyear in its Assumed or Common Name, Defendants, and file this their Complaint, and for cause of action would respectfully show to the Court as follows:

Parties

1.    Plaintiff Ignacio Morales Paz is Mexican national, and resides in Monterrey, NL, Mexico.  Plaintiff brings individual claims, and claims from all wrongful death beneficiaries of Alma Hernandez Paz, Deceased, and Brandon Morales Paz, Deceased. Plaintiff is the widower of Alma Hernandez Paz, Deceased, and sues as Representative

of the Estate of Alma Hernandez Paz. Plaintiff Ignacio Morales is the natural father of Brandon Morales Paz, and sues as Representative of the Estate of Brandon Morales Paz.

2.     Plaintiff Kenia Morales Paz is a Mexican national, residing in Monterrey, NL, Mexico.

3.     Defendant The Goodyear Tire & Rubber Co. (referred to collectively with Goodyear Dunlop Tires North America, Ltd. and Goodyear in its assumed or common name as "Goodyear") is a foreign corporation existing under the laws of Ohio with its principal place of business in Ohio and which conducts business in Texas as authorized.

4.     The Goodyear Tire & Rubber Co. can be served through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

5.     Defendant Goodyear Dunlop Tires North America, Ltd. (referred to collectively with The Goodyear Tire & Rubber Co. and Goodyear in its assumed or common name as "Goodyear") is a foreign corporation existing under the laws of Ohio with its principal place of business in Ohio and which conducts business in Texas as authorized.

6.     Goodyear Dunlop Tires North America, Ltd. can be served through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

7.     Defendant Goodyear in its assumed or common name is sued under Rule 28 of the Texas Rules of Civil Procedure and includes suit against any and all partnerships, unincorporated associations, private corporations, and individuals doing business under

2

the assumed name "Goodyear" which is hereby sued in its partnership, assumed or common name in connection with researching, developing, designing, making, inspecting, selling, marketing, warranting, or any combination of these activities in connection with tires with the lettering "Goodyear" on the tire's sidewall.  *See* Tex. R. Civ. P. 28.

<u>Venue and Jurisdiction</u>

8.     Venue is proper in the Western District of Texas, because all or a substantial part of the acts and/or omissions complained of occurred in this judicial district.

9.     This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(b), because the Plaintiffs are citizens of a foreign state not domiciled in the United States. Alternatively, Defendants are all citizens of the States of Delaware and Ohio.

10.    This Court has jurisdiction over the parties to this civil action because all defendants either resided in Texas or have purposefully availed themselves of the privileges and benefits of doing business in Texas.

11.     The Defendants are subject to specific jurisdiction in this matter now before this Court.

12.     When assessing specific personal jurisdiction, the Court's first step "is to determine whether the connection between the forum and the episode-in-suit could justify the exercise of specific jurisdiction" because courts have the "ability to hear claims against out-of-state defendants when the episode-in-suit occurred in the forum or the defendant purposefully availed itself of the forum," and this case far exceeds that threshold.

13.     The location of the episode-in-suit is the location of the crash regardless of

3

where the product was manufactured or where it was first sold, and that location is Texas.

14.     The affiliation between the Texas forum and the episode-in-suit warrants specific jurisdiction, which is properly exercised based on an "affiliation between the forum and the underlying controversy [such as] an occurrence that takes place in the forum" (like the location of the crash in this controversy) so long as the fairness factors are met.

15.     Numerous courts have rejected Goodyear's often recycled argument that there is no specific personal jurisdiction where the crash of a Goodyear product injured or killed the claimants when the Goodyear product was initially sold into another jurisdiction.

16.     When assessing specific personal jurisdiction, the Court's second step "is to consider several additional factors to assess the reasonableness of entertaining the case," but Goodyear has offered no challenge disputing the factors to assess the reasonableness of entertaining the case.

17.     When a corporation "purposefully avails itself of the privilege of conducting activities within the forum State … it has clear notice that it is subject to suit there [and if] the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve **directly or indirectly**, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others," and this aptly describes Goodyear's relationship with Texas.

18.      Where nonresident defendants "'purposefully derive benefit' from their interstate activities … it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities [because] the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed," and Goodyear has purposefully obtained such benefits.

19.      "The placement of a product into the stream of commerce" plus "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, … advertising in the forum State [or] establishing channels for providing regular advice to customers in the forum State," and Goodyear has engaged in such advertising and has established such channels of communication in Texas.

20.      "The stream-of-commerce cases … relate to exercises of specific jurisdiction in products liability actions, in which a nonresident defendant, acting outside the forum, places in the stream of commerce a product that ultimately causes harm inside the forum," because the "[f]low of a manufacturer's products into the forum may bolster an affiliation germane to *specific* jurisdiction," and this aptly characterizes Goodyear's conduct in relation to the harms at issue which Goodyear caused inside the Texas forum.

21.      A nonresident defendant is subject to personal jurisdiction under the Texas long-arm statute by virtue doing business in Texas, by contracting with Texas residents pursuant to contracts to be performed in part in Texas, by committing torts where one or more elements of the tort occurred in Texas, and by recruiting Texas residents for employment, and Goodyear has engaged in such business in Texas.

22.    There is no burden on Goodyear (or the other the defendants) to litigate this civil action in the Texas forum where the crash occurred.

23.    Texas has an interest in adjudicating this dispute which occurred in Texas, which has already been investigated by Texas law enforcement officers, which involved the assessment of conduct that occurred in Texas as well as products which failed in Texas, and which both killed and catastrophically injured people in the State of Texas.

24.    The Morales Paz family's interest in obtaining convenient and effective relief militates in favor of litigating in the Texas forum where the witnesses to the crash and the witnesses to the immediate post-crash treatments and investigation are located.

25.    The interstate judicial system's interest in obtaining the most efficient resolution of controversies warrants litigating this case in Texas where the defective products at issue failed, and where the crash occurred.

26.    The shared interest of the several States in furthering fundamental substantive social policies warrants litigating this case in Texas where the defective products at issue failed, and where the crash occurred.

27.    Goodyear researched, developed, designed, industrialized, manufactured, assembled, inspected, tested, marketed, distributed, sold, and placed into the stream of commerce the Goodyear Wrangler HP tire sized P275/60R20 with US DOT #M6YN FODR 4305,  involved in the crash at issue, which occurred in Texas and caused injury and death to members of the Morales Paz family in Texas.

28.    The exercise of specific personal jurisdiction over Goodyear pursuant to the Texas long-arm statute is consistent with the Due Process Clause and the principles of fundamental fairness by virtue of Goodyear doing business in Texas.

29.     Goodyear contracts with individuals and businesses resident in Texas pursuant to contracts to be performed in part in Texas.

30.     Goodyear committed the torts at issue in this case where the causation of damages is an element of the tort and that element occurred in Texas.

31.     Goodyear recruits Texas residents for employment.

32.     Goodyear purposefully avails itself of the privilege of conducting activities within Texas.

33.     Goodyear has clear notice that it is subject to suit in Texas.

34.     Goodyear's  sale of the Goodyear Wrangler HP tire sized P275/60R20 is not simply an isolated occurrence, but arises from Goodyear's efforts to serve, directly and indirectly, the market for this specific product in Texas and the 49 other states.
indirectly, the market for this specific product in Texas and the 49 other states.

35.     Goodyear developed its Goodyear Wrangler HP tire for sale as an original equipment tire for sports utility vehicles (SUVs) and pickups like the 2006 Dodge Ram pickup at issue and also directly sold its Goodyear Wrangler HP tire into the replacement tire market in Texas.

36.     Goodyear's development and sale of the Goodyear Wrangler HP tire as original equipment on vehicles it knew were to be sold in Texas and in the Texas replacement tire market confirms Goodyear purposefully avails itself of the privilege of conducting activities within the Texas forum and has clear notice that Goodyear is subject to suit here when its Goodyear Wrangler HP tires fail here and cause fatal injuries here.

37.    Goodyear has indirectly served the Texas market for its Goodyear Wrangler HP tire by its intentional pursuit of sales of Goodyear Wrangler HP tires as original equipment on SUVs and pickups Goodyear knew would be sold in Texas.

38.    Goodyear has directly served the Texas market for its Goodyear Wrangler HP tire by its intentional pursuit of sales of Goodyear Wrangler HP tires as replacement tires through hundreds of Goodyear-approved tire sellers across Texas (including numerous Goodyear-owned tire sellers in Texas and many official Goodyear Tire & Service Network tire sellers in Texas).

39.    Goodyear has sold tens of thousands (if not hundreds of thousands or more) of Goodyear Wrangler HP tires directly and indirectly into the Texas forum.

40.    Goodyear's sale of Goodyear Wrangler HP tires directly and indirectly into the Texas forum represents a high percentage of the total number of Goodyear Wrangler HP tires Goodyear has sold for profit.

41.    Goodyear has made sales of Goodyear Wrangler HP tires destined for the Texas market in an amount in the millions of dollars (if not in a tens-of-millions-of-dollars amount or more).

42.    Goodyear's sale of Goodyear Wrangler HP tires destined for the Texas forum represents a high percentage of the total sales revenue of Goodyear Wrangler HP tires have generated as part of Goodyear's sale of Goodyear Wrangler HP tires for profit.

43.    Goodyear makes early warning reports to the government pursuant to 49 CFR 579.26, and these early warning reports catalog incidents involving death or injury claims reportedly related to the failure of Goodyear Wrangler HP tires, property damage

claims reportedly related to the failure of Goodyear Wrangler HP tires, and warranty adjustments reportedly related to the failure of Goodyear Wrangler HP tires.

44.    Goodyear makes early warning reports to the government pursuant to 49 CFR 579.26, and these early warning reports document that a high percentage of claims involving death or injury or property damage or warranty adjustments are reported as being related to the failure of Goodyear Wrangler HP tires arise in Texas.

45.    Goodyear placed the Goodyear Wrangler HP tires into the stream of commerce with the expectation that they would be used by consumers in Texas, and were marketed and sold nationwide, and so Goodyear, like any manufacturer of tires for a personal vehicle, necessarily foresaw that such tires would be used in multiple states, including Texas, and such foreseeable use meets the stream-of-commerce test.

46.    Goodyear knowingly benefits from the availability of Texas' market for its products, and so it is only fitting that Goodyear be amenable to suit in this state when (1) the crash occurred in Texas; (2) the parties suffered injury – including fatal injury – in Texas; (3) the crash was investigated by officials with the Texas Department of Public Safety; and (3) witnesses to the crash are located in Texas.

47.    Goodyear does extensive marketing and sales of its Goodyear Wrangler HP tires in Texas, and when the failure of Goodyear Wrangler HP tires has caused injuries – including fatal injuries – giving rise to lawsuits in Texas, it is not unreasonable for Goodyear to be called upon to answer suit in this state.

48.    It is reasonable to subject Goodyear to suit in Texas because its defective Goodyear Wrangler HP tire has been the source of injury to its owner and the others claimants in Texas.

49.     Because Goodyear purposefully derives benefit from its interstate activities, it would be unfair to allow Goodyear to escape having to account in Texas for consequences that arise proximately from Goodyear's interstate activities.

50.     Allowing Goodyear to escape jurisdiction would improperly allow Goodyear to wield the Due Process Clause as a territorial shield to avoid interstate obligations that Goodyear has voluntarily assumed.

51.     In addition to placing the Goodyear Wrangler HP tire into the stream of commerce, Goodyear has also indicated an intent to serve the market in Texas by engaging in the additional conduct of advertising in Texas.

52.     In addition to placing the Goodyear Wrangler HP tire into the stream of commerce, Goodyear has also indicated an intent to serve the market in Texas by engaging in the additional conduct of establishing channels for providing regular advice to customers in Texas.

53.     Goodyear placed in the stream of commerce the Goodyear Wrangler HP tire sized which ultimately caused harm inside Texas as a result of the flow of  Goodyear's products into Texas.

54.     Goodyear's contacts with Texas include the sale of both new tires,  as well as the servicing of tires  (including tires initially purchased in other states).

55.     Goodyear placed its Goodyear Wrangler HP tire into the stream of commerce by targeting Texas through approved Goodyear sales distributors and outlets in many dozens of cities and towns in Texas.

56.     Goodyear contracts with Texas businesses under written agreements that require performance of part of the contractual obligations in Texas.

56.     Goodyear contracts with Texas businesses under written agreements by which Goodyear establishes the standards for service personnel employed in Texas.

58.     Goodyear contracts with Texas businesses under written agreements by which Goodyear  establishes the standards for tools and equipment used in Texas, handling customers in Texas, evaluating the service provided by Goodyear service locations.

59.     Goodyear contracts with Texas businesses under written agreements by which Goodyear establishes the standards for handling customers in Texas.

60.     Goodyear contracts with Texas businesses under written agreements by which Goodyear engages in in-state advertising and promotion of Goodyear tires for sale in Texas.

61.     Goodyear contracts with Texas businesses under written agreements by which Goodyear contractually promises to indemnify Texas businesses which sell Goodyear products from losses, damages, attorney fees, and other harms resulting claims about the failure of Goodyear products that cause property damage or injury or death in Texas.

62.     Goodyear participates in interactive websites for the purchase of its products, including within Texas.

63.      Goodyear provides certification training for mechanics who work at the Goodyear service centers at multiple locations in Texas.

64.     Goodyear oversees aspects of its product warranty process from within Texas.

65.     Goodyear sends technical service bulletins regarding work procedures related to the Goodyear Wrangler HP into Texas.

66.    Goodyear sends recall notices related to the Goodyear Wrangler HP tire into Texas.

67.    Goodyear directs customers to approved Goodyear service centers in Texas to have recall and service bulletin work performed on Goodyear Wrangler HP tires s initially sold into various states but located in Texas at the time of the necessary recall repair and replacement work.

68.    Goodyear gathers data about its product performance in Texas and uses that data in the redesign of its products.

69.    Goodyear's  long history of litigation in Texas involving defective tires confirms that Goodyear should reasonably anticipate being haled into court in Texas based on crashes which occurred in Texas.

70.    Goodyear has been a party in Texas courts seeking relief or review in numerous cases where it has purposefully availed itself of the benefits and protections of the jurisdiction of courts in Texas by serving as the petitioner, appellant, or removing party in such cases.

71.    All Goodyear defendants are registered to do business in Texas and both have registered agents for service of legal process in Texas.

72.    Goodyear has reaped millions of dollars in profits from the sale of hundreds of thousands of Goodyear Wrangler HP tires in Texas.

73.    Goodyear spends millions of dollars annually marketing Goodyear products and services in Texas, including Texas-specific marketing and national marketing that pervades into Texas.

74.     Goodyear holds patents and trademarks which it demands must be honored in Texas.

75.     Goodyear has an active website accessible in Texas where Goodyear engages in the direct sale of Goodyear products from this website, which has numerous interactive features through which Goodyear exchanges information with Texas customers and establishes channels for providing regular advice to Texas customers.

Facts

76.     On or about September 15, 2016, Plaintiff Ignacio Morales was driving a 2006 Dodge Ram pickup on IH-35E in Hill County, Texas.  Alma Hernandez Paz, Kenia Morales Paz and Brandon Morales Paz were all passengers in the Dodge pickup.  The pickup's left rear tire was a Goodyear Wrangler HP tire sized P275/60R20 with US DOT #M6YN FODR 4305, manufactured and marketed by the Goodyear Defendants.  The left rear tire de-treaded, causing Plaintiff Ignacio Morales to lose control of the Dodge pickup.  The tire at issue failed, because it was defective.  The Dodge pickup left the lanes of travel into the right hand ditch along the roadway and rolled over several times. Brandon Morales Paz and Alma Hernandez Paz were ejected during the rollover. Brandon Morales Paz and Alma Hernandez Paz were killed as a result of the crash. Ignacio Morales and Kenia Morales Paz suffered bodily injuries as a result of the crash. The crash report prepared by Texas DPT indicated that a defective tire was a contributing cause to the accident.

77.     The Goodyear Wrangler HP tire sized P275/60R20 with US DOT #M6YN FODR 4305 contained the following manufacturing and/or design defects which rendered the

Goodyear Wrangler HP tire at issue unreasonably dangerous and susceptible to the dangerous failure mode of tread separation, a risk which tragically manifested in this civil action:

a.    poor rubber-to-rubber adhesion, which was caused by air or moisture trapped between layers of the tire, or user of a refreshing solvent which had not dried;

b.    poor rubber-to-wire adhesion due to a lack of proper curing of the tire, or the advanced age of the tire which caused the component parts to degrade and deteriorate;

c.    inadequate reinforcement of the Goodyear Wrangler HP's belt package (a reinforcement made of nylon, Kevlar, aramid, or polyamide wrapped around the outside of the top belt and underneath the tread is a safer alternative design known to be technologically feasible and economically feasible and effective to significantly reduce the risk of injury from tread separations when the failed Goodyear Wrangler HP tire at issue was made in October of 2005 at Goodyear's plant in Lawton, Oklahoma, and Goodyear has adopted such safer alternative designs for P275/60R20 tires sold into the market for SUV and pickup truck tires).

These defects caused the tread of the Goodyear Wrangler HP tire sized P275/60R20 with US DOT #M6YN FODR 4305 to peel off, and cause the collision made the basis of this suit.

78.    In connection with Goodyear's manufacturing practices, Goodyear has product standards and cured tire standards and a manual of visual standards used by tire inspectors and tire classifiers in the final finish inspection, and these documents set forth standards which Goodyear has recognized.

79.    In connection with Goodyear's manufacturing practices, Goodyear has work procedures for tire builders which set forth standards which Goodyear has recognized.

80.    In connection with Goodyear's manufacturing practices, Goodyear has training materials including videotapes and tests for tire builders which set forth standards which Goodyear has recognized.

81.    In connection with Goodyear's manufacturing practices, Goodyear has work procedures for tire inspectors which set forth standards which Goodyear has recognized.

82.    In connection with Goodyear's manufacturing practices, Goodyear has training materials including videotapes and tests for tire inspectors which set forth standards which Goodyear has recognized.

83.    In connection with Goodyear's manufacturing practices, Goodyear has product tolerance limits which set forth some of the standards which Goodyear has recognized.

84.    Goodyear has possession of documents, testimony, and information which confirm that it has established a link between certain cured tire defects and their probable causes.

85.    Goodyear has possession of documents, testimony, and information which confirm that is has established a link between nonconformance to standards and tread separations.

86.    In connection with Goodyear's tire design practices, Goodyear has work procedures for tire and tire component designers which set forth standards which Goodyear has recognized.

87.    In connection with Goodyear's tire design practices, Goodyear has training

materials including videotapes and tests for tire and tire component designers which set forth standards which Goodyear has recognized.

88.    In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear performs Failure Modes and Effects Analysis which address tread separation and other failure modes.

89.    In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear runs tire endurance tests and tread separation is not the typical failure mode for such test tires.

90.    In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear runs tests with overdeflected tires and tread separation is not the typical failure mode for such test tires.

91.    In connection with Goodyear's tire design practices, Goodyear has possession of documents, testimony and witness statements about Goodyear's efforts to design around the known problem of tread separations in Goodyear Wrangler tires, including the testimony or employees and ex-employees such as Beale Robinson, Daniel Hammontree, Tom Johnson, and others who gave statements or testimony in the *Frankl* case from New Jersey and the *Gamez* case from Texas as well as other cases.

92.    In connection with Goodyear's design, manufacturing, and warranty practices, Goodyear has adjustment documents with tire condition descriptions, condition lists, condition codes, and condition pictures and illustrations, and which set forth standards

which Goodyear has recognized.

93.     In connection with Goodyear's design, manufacturing, and warranty practices, Goodyear has work procedures for tire adjustment center personnel which set forth standards which Goodyear has recognized.

94.     In connection with Goodyear's design, manufacturing, and warranty practices, Goodyear has training materials including videotapes and tests for tire adjustment center personnel which set forth standards which Goodyear has recognized.

95.     In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear maintains and analyzes warranty return adjustment data.

96.     In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear uses warranty return adjustment data and graphs to chart and compare tire models against other tire models.

97.     In connection with Goodyear's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Goodyear uses warranty return adjustment data and graphs to chart and compare tire plants against other tire plants.

98.     In connection with Goodyear's knowledge of the link between its manufacturing practices and designs and tire tread separations, Goodyear has a tire adjustment claims procedure and replacement policy administration guidelines.

99.     These affidavits, depositions, trial testimony, and other statements of Goodyear employees and ex-employees describe manufacturing conditions and practices at

Goodyear tire plants, and document Goodyear's historical knowledge of its in-plant conditions and its knowledge of how tire failures are related to those manufacturing practices.

Causes of Action

100.    The tire at issue was defectively designed and the risks of the chosen design of the tire outweighed the utility of the chosen designs, particularly in light of the fact that known safer alternative designs were technologically and economically feasible and were used by Goodyear in other tires made for foreign markets while the designs of tires without the alternative designs for the US market.

101.    Goodyear was negligent in designing and manufacturing the tire in such a manner that it failed to meet Goodyear's own recognized standards and was defective and was unfit for its ordinary uses and was outside of warranted standards.

102.    Goodyear is and was aware prior to the design, prior to the manufacture, prior to the sale, and prior to the failure of the tire at issue of the magnitude of the risk posed by the tread peeling off of its tires.

103.    Goodyear's awareness of this risk and awareness of the magnitude and nature of this risk is confirmed by Goodyear's knowledge of prior property damage claims and injury claims and death claims from the tread separation of Goodyear light truck tires.

104.    Goodyear has possession of documents, testimony, and information that confirm Goodyear negligently made Goodyear Wrangler tire despite objective and subjective knowledge of other tire companies' alternative tire designs by virtue of reverse engineering those tires and comparing their designs with Goodyear designs.

105.    Goodyear has possession of documents, testimony, and information that confirm

Goodyear negligently and maliciously made the Goodyear Wrangler tire despite objective and subjective knowledge of other tire companies' alternative tire designs by virtue of access to Smithers' reports on competitors tires.

106.    The documents and testimony produced in prior litigation asserting fatalities associated with the tread separations of Goodyear Wrangler tires confirm Goodyear's liability and the nature of its tortuous conduct.

107.    There are no applicable mandatory safety standards regarding the risk of tread separations, and the regulations regarding tires are inadequate to protect the public from unreasonable risks of injury, and one reason for the inadequacy of these regulations is Goodyear's lack of candor in connection with the government's determination of the adequacy of tire regulations.

108.    Goodyear, as a part of its business, is engaged in, and has been engaged in since 2009 and earlier, the researching, developing, designing, making, inspecting, marketing, selling, and warranting of tires for use on passenger cars and light trucks by placing such tires in the course of commerce by transactions that are essentially commercial in character.

109.    Goodyear has voluntarily done business in Texas.

110    The Goodyear Tire & Rubber Co. is subject to this Court's jurisdiction.

111.    Goodyear Dunlop Tires North America, Ltd. is subject to this Court's jurisdiction.

112.    Goodyear in its assumed or common name operates as an alter ego or single business enterprise (or both) with The Goodyear Tire & Rubber Co. and Goodyear Dunlop Tires North America, Ltd.

113.    The Goodyear Tire and Rubber Co. owns a controlling majority interest in

Goodyear Dunlop Tire North America, Ltd., and The Goodyear Tire and Rubber Co. has reported the profits, assets, and employees of Goodyear Dunlop Tire North America, Ltd. as its own.

114.    The Goodyear Tire and Rubber Co. and Goodyear Dunlop Tire North America, Ltd. have consolidated tire manufacturing operations, tire marketing operations, and tire distribution operations.

115.    The quality control standards adopted by The Goodyear Tire and Rubber Co. are the same as those adopted by Goodyear Dunlop Tire North America, Ltd., and these standards reflect a company-wide pattern of gross neglect.

116.    The plant operation standards adopted by The Goodyear Tire and Rubber Co. are the same as those adopted by Goodyear Dunlop Tire North America, Ltd., and these standards reflect a company-wide pattern of gross neglect.

117.    The standards with regard to drugs within the tire plants as adopted by The Goodyear Tire and Rubber Co. are the same as those adopted by Goodyear Dunlop Tire North America, Ltd., and these standards reflect a company-wide pattern of gross neglect.

118.    The malicious and grossly negligent tire plant operations practiced by The Goodyear Tire and Rubber Co. are the same as those practiced by Goodyear Dunlop Tire North America, Ltd., and these operations reflect a company-wide pattern of gross neglect.

119.    Goodyear in its assumed or common name is subject to this Court's jurisdiction.

120.    There is no Federal Motor Vehicle Safety Standard that applies to the failure of the defective tire at issue, and if there were, it is inadequate to protect the public from

unreasonable risks of injury.

121.   Goodyear is aware, through numerous studies, that tires and their component parts degrade over time, and that the use of old tires poses an unreasonable risk to consumers.  Goodyear is aware, though numerous studies, that using a tire that is more than 10 years old is dangerous and can lead to critical failures in the tire.   Yet, Goodyear provides no such warning to end-consumers, or to intermediate tire sellers, dealers, and service facilities.  The Goodyear tire on the Morales Paz vehicle was manufactured in the 43rd week of 2005, and was more than 10 years old when it failed. Goodyear's failure to provide an adequate warning about the use of old tires rendered the Goodyear tire defective and unreasonably dangerous, which was a direct and proximate cause of Plaintiffs' damages herein.

<u>Damages</u>

122.   As a producing, direct and proximate result of the incident, injuries, and damages for which all defendants are liable, the Morales Paz family seeks and are entitled to general damages, special damages, economic damages and non-economic damages in an amount in excess of the minimum jurisdictional limits of this Court.

123.   In addition to all damages awardable for a survival action and wrongful death claims, the actual damages sought herein include but are not limited to personal injury damages (such as pain and mental anguish and all other personal injury damages allowed by law and equity) and all lawful compensations for injuries to the familial relationship including all harms a parent suffers when

their child is killed (such as loss of household services in the past and future and loss of consortium in the past and future).

124.   In addition to each of these damages, the Morales Paz family also seeks prejudgment and post-judgment interest as well as all compensable court costs.

125.   No administration of the Estates of Alma Hernandez Paz, Deceased, and Brandon Morales Paz, Deceased, is pending, and none is currently necessary.

<u>Jury Demand</u>

126.   Plaintiffs demand a trial by jury for all issues so triable.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Court cite Defendants to appear and answer herein, and that upon final hearing of this matter, that the Court render a judgment in favor of Plaintiffs and against Defendants, jointly and severally, for: compensatory damages, exemplary damages, costs of court, pre- and post-judgment interest at the highest lawful rate, and for all such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**GUERRA LAW GROUP, PLLC**
4201 North McColl Rd.
McAllen, TX 78504
Telephone No. (956) 618-3000
Telecopier No. (956) 686-4200
Email: efilings@guerralawgroup.com

By:_____*/s/ David J. Lumber*_____
         David J. Lumber
         State Bar No.: 24002504

**ATTORNEYS FOR PLAINTIFF**